<hr />

FLAGG *vs.* RUDEN.

*In the matter of the Estate of* ALEXANDER RUDEN, *deceased.*

A BOND for the payment of money, past due eighteen years and four months when the obligor died, no payment or demand of payment of principal or interest ever having been made upon it, will not from the mere lapse of time be presumed to have been paid; but presumption of payment may be deduced from other circumstances, in connection with lapse of time.

A failure to demand payment until after the decease of the obligor, the assignment of the bond immediately after his death to a third person, and the

absence of a verification by the claimant, of the validity of the debt, and that no payments have been made, are, together with the expiration of more than eighteen years since the bond became due, without any payment or demand of payment, circumstances from which payment might be presumed.

It is discretionary with the Surrogate, whether or not on the petition of an alleged creditor, he will order the payment of a demand against the estate contested by the administrator or executor.

If the executor or administrator has rejected a claim, it is not incumbent upon the creditor to prosecute his demand within six months thereafter, unless there has been an advertisement for claims under the statute. Such an advertisement is necessary to set running this statute of short limitation of six months, after the presentation and rejection of a demand.

G. H. STRIKER, JR., *for Petitioner.*
EDMUND WILKES, *for Administratrix.*

THE SURROGATE. Alexander Ruden died May 20, 1848. Letters testamentary were issued to his widow and executrix, Magdaline Ruden, July 18, 1848, and on the 5th October, 1849, Samuel D. Flagg, and others, filed their petition, praying for the payment of certain claims against the estate of the deceased. The claims consist of two bonds, one dated Sept. 11, 1826, conditioned for the payment of $700 and interest, on or before 1st January, 1827; and the other, dated Dec. 11, 1829, conditioned for the payment of $1000 and interest, on or before 1st January, 1830. Both the bonds are payable to Rachel Ruden, who in June, 1848, assigned them to the petitioners.

The executrix in her answer, denies the execution of the bonds, and on the hearing set up orally by her counsel, that from lapse of time and other circumstances, the bonds should be presumed to have been paid. Although payment was not strictly pleaded, yet if a substantial defence could be made out on that ground, the pleading might be amended, and I will therefore proceed to consider the case upon the merits.

The bond due 1st January, 1827, comes clearly within the Common Law and statutory rule as to presumption of

payment, twenty-three years having elapsed since a right
of action thereon accrued.   Indeed, this claim was aban-
doned by the counsel for the petitioners on the hearing.   I
cannot pass from this point, however, without remarking
that the failure of this branch of the case must necessarily,
with any mind, affect the demand on the other bond.   The
bonds appear to have travelled together, they were given
to the same obligee, transferred to the same assignees about
the same time, and are presented together with the same
averments as to their validity, and the indebtedness of the
estate upon both.   The bonds are, in a legal sense, inde-
pendent instruments, but on an application of this kind
after a lapse of so many years, even the slightest circum-
stances are not to be entirely disregarded.

As to the second bond, it became due 1st January,
1830, the very day when Section 48, 2 *R. S.*, *3d ed.*, *p.*
398, went into operation.   That section declares, that after
the expiration of twenty years from the time a right of
action shall accrue upon any sealed instrument for the
payment of money, such right shall be presumed to have
been extinguished by payment, unless such presumption
be repelled by proof of payment of a part, or a written
acknowledgment of a right of action within that period.

The Revisers in their note to this section, say, " It has
been supposed useful to declare this doctrine of presump-
tion, and define it with more accuracy than has been done
by the Courts who speak of an indefinite time of eighteen
or twenty years, or even a less period."   They refer for
this opinion to the *Executors of Clark* vs. *Hopkins*, 7 *John.*
*R.*, 556, where the Court said, " It has been decided (6
*Mod.*, 22 ; 1 *Burr.*, 434 ; 4 *Burr.*, 1963 ; 1 *Str.*, 652 ; 2 *Str.*,
826 ; 1 *Term R.*, 270, 271 ; *Cowp.*, 109, 214), that after
eighteen or twenty years, a bond will be presumed to have
been paid, and the obligee ought to show a demand of
payment, and an acknowledgment of the debt within that
time, to rebut this presumption."

The presumption of payment is always a question for

the jury. Before our statute, and in England, before the 3 & 4. *Will.*, 4, *c.* 42, § 3, the Courts by analogy to the statute of limitations, had established the artificial rule of presumption of payment already adverted to, on the ground that the most obvious presumptive proof of that fact, consisted in no demand having been made for a considerable time, and that where there was no payment of interest or other circumstance to show that the demand was still in force, payment or release ought to be presumed by a jury. (*Best on Presumptions*, 188.)

But even though the statute be not pleaded, the fact of payment may still' be presumed by a jury from lapse of time, and in connection with so long a time as eighteen or nineteen · years, "the slightest evidence is sufficient," or other circumstances which may render the fact probable. (*Jackson* vs. *Sackett*, 7 *Wend.*, 94; *Barr* vs. *Williams*, 8 *Pick.*, 187; *Oswald* vs. *Legh*, 1 *T. R.*, 271; 3 *Starkie's Ev.*, 823; *Cooper* vs. *Turner*, 2 *Stark.*, 497; *Sellen* vs. *Norman*, 4 *C. & P.*, 80; 2 *Camp.*, 162; 1 *Esp.*, 296.) In *Colsell* vs. *Budd*, 1 *Camp.*, 27, Lord Ellenborough laid down the rule that, "after a lapse of twenty years, a bond will be presumed to be satisfied, but there must either be a lapse of twenty years, or a less time, coupled with some circumstance to strengthen the presumption."

"The very fact of acquiescence or forbearance in him who has refrained to institute his claim, is in itself a strong presumption that it was the result of a consciousness on his part that the claim is unfounded, or at least, extremely questionable. Presumptions are always founded upon the ordinary course of things, and it is not very usual for a creditor to delay enforcing the payment of what has been for a considerable time due." (*Angell on Limitations*, 10, 80, 96.)

Now the bond which became due 1st January, 1830, was not presented to the obligor for payment in his lifetime; at least, no proof of such a demand was given. It had been due eighteen years and four months when the

obligor died. No payment of principal or interest had then been made or endorsed upon it. The first demand was made upon the administratrix in November, 1848. I do not understand the petitioners as insisting that the administratrix made such acknowledgments at that time, as might fairly be construed into an admission of the demand. From what transpired then, I certainly ought not to give this claim any greater weight than it was entitled to before. (*Angell on Limitations*, 290.) Nor, on the other hand, ought the claimants to be prejudiced by what occurred at that time. Should the administratrix have distinctly rejected the claim, the claimant would not have been bound to have prosecuted it within six months after such demand, inasmuch as the section of the statute relied upon for sustaining that position, applies only to demands made upon and rejected by an executor or administrator, after an advertisement for claims according to law. (2 *R. S.*, 3d ed., p. 152, §§ 37, 38, 41; *Whetmore* vs. *Foose*, 1 *Denio*, p. 159.)

There must be an advertisement to set this statute of short limitation running.

Laying aside the demand of payment in question, and bearing in mind that the claimants had eighteen months (*Wenman* vs. *Mohawk Ins. Co.*, 13 *Wend.*, 267) after the decease of Mr. Ruden, during which the neglect to enforce their demand could not prejudice their case, the matter is brought back to a simple question of presumption of payment of a bond past due eighteen years and some months. If that question is to be determined by the rule laid down in the Revised Statutes (upon which point some doubt may perhaps be entertained), the mere lapse of time would not be sufficient in itself to establish the presumption. But the statute has not altered the Common Law rule, that payment may be presumed from other circumstances in connection with lapse of time. Now I have been strongly impressed with this peculiar feature of the case. After remaining quiet for over eighteen years, the first act indi-

cating a determination to treat these bonds as existing and valid claims consists in the assignment of them, a month after the obligor was in his grave. Again, the assignees prosecute them here, through the intervention of an attorney, who necessarily can only verify the petition by information, derived either from an inspection of the papers, or from the parties. The statute (2 *R. S.*, *3d ed.*, *p.* 152, § 38) authorizes an executor or administrator, upon a claim being presented aginst the estate of a deceased person, to require the oath of the claimant that such claim is justly due, that no payments have been made thereon, and no offsets exist against the same. This is a wise provision, designed to reach the conscience of the claimant, and to bring to light facts known only to the deceased and the claimant, or of which the executor or administrator might be ignorant. A creditor seeking to enforce his demand in this Court, ought always to verify it in this mode, if it be contested ; and this is of necessity an oath which none but the creditor himself can take.

These bonds were assigned almost immediately after the death of Mr. Ruden, a very important party to explain them, and throw light on the transaction. The petitioners depend merely upon the formal assignments, and there is not a solitary allegation verified by the obligee, or the petitioners themselves. The naked instruments alone are relied upon. With an acquiescence of eighteen years, and a sudden resurrection of the claim, on the death of the obligor, the formal transfer to third parties, and the absence of any verified allegation, except on the information of the attorney, as to payments and offsets, it would not, I think, be proper for me to order payment. These circumstances may be explained, but whether or not, I should be loth to exercise the discretionary power given me by statute, in a case like this. The law giving me jurisdiction (2 *R. S.*, *3d ed.*, *p.* 178, § 19), is not imperative (*Kidd* vs. *Chapman*, 2 *Bar. Ch. R.*, 414) ; and where the claim of a creditor, presented under this section of the statute, has

been rejected by the Surrogate after a full trial, it is no bar to a suit at law. (*Fitzpatrick* vs. *Brady*, 6 *Hill.*, 581.) An action may be brought on the bonds under as favorable circumstances for a recovery, as if this application had never been made to me. If I were compelled to decide the case upon the merits, I should dismiss the petition. I prefer, however, to place the denial of the application on the ground, that it does not seem to me a proper case for the exercise of the discretionary power given me by the section of the statute under which the petition is filed.